Good morning, your honors. May it please the court. Cori Johnson representing here for the Lintons. The Lintons contend that they contributed property to an LLC and then gifted interests of an LLC to their children's trusts. There's no dispute that the title owner of the property is the LLC and not the trust, and that the trust only received LLC interests. The worst case scenario here for the Lintons is that there is no gift, that they were unsuccessful in making a gift. If the order of the transaction occurred as the government contends, which is that the LLC interests were gifted, and then property was contributed to the LLC, because of the way the partnership agreement works, and because of state law governing LLCs and the Internal Revenue Code, Section 704, that contribution would be allocated solely to the Lintons' capital account, so that upon dissolution of the partnership, everything that they contributed would be allocated right back to them. There's no entitlement of the... There's a document, which I'd like you to explain to me, that I think is an ER-228, and it may be part of a tax return or something, but it seems to demonstrate that that isn't what happened. It's called Partner's Capital Account Summary, and it shows that capital contributed was $1,792,000 something, and then the withdrawal was such and such, and the ending capital was $185,031. And then it shows the capital being transferred to the trust. Right. This schedule at Section 228 is in accord with the membership ledger, which is also the capital account records. So it's showing that the capital accounts were transferred. So that's showing that the capital contributed by each of the Lintons was $1.7 each, and that they received 100% of the LLC interest in exchange for that capital contribution. And then it says... And then what does withdrawal mean? And then later, when they gifted their interest in that LLC to the trust, then their capital account decreased by 1.6. But my point is that your argument is against the membership ledger and the capital account summary with regard to what actually happened here, which was that there was a withdrawal and there was a transfer. So you're saying the worst thing that could happen is there wasn't one, but there was one. We know that. It says so. Well... Yes, because this document was created because the Lintons believed, and everyone involved in this transaction believed, that the contribution was made to the LLC, and then the capital accounts were credited with the full amount of... I understand that, but I don't know that you can rewrite history backwards and say that if, in fact, it was contributed to the capital account at some different point, still this transfer wasn't made. It shows that the transfer was made. The question is, what's the consequence of the transfer having been made? Right. I mean, these documents were made because everyone involved believed that the order occurred as the Lintons contend, a contribution to the LLC and then a gift of the interest. If it did not occur that way, then these capital accounts do not reflect the transaction, because what would happen is then the capital would be contributed and the Lintons would have 100% of the capital. There would be no withdrawals from their capital account and no indication that the trusts, numbers three through six, would have any... I don't understand whether it couldn't have nonetheless been a withdrawal from their account. I understand that if that was the order of things, the money would have gone into their capital account at the time they put it in, but couldn't they transfer it out? No, not under the partnership, not under the... Anything that's put into the LLC after it's first funded just stays in the capital account and can't be moved around. Under the partnership agreement and under Washington law governing LLCs and actually under code 704 of the Internal Revenue Code, the partner's capital account, when they make a contribution, gets credited to them. It's only then if they gift partnership interest or give partnership interest that their capital account would be decreased and someone else's capital account would be increased. If there was no subsequent... So on contribution here, this shows that the capital was contributed. They had $1.7 million of capital each. They got 100% of the LLC interest. Then this document shows at some point, there's no dates, but this document shows that they then gave their capital to the trusts. They gave each $1.6 million. That's why their capital accounts show a withdrawal and the trusts show an increase of $800,000 for the four trusts. Ms. Johnson, it seems to me, if I understand this correctly, that if the transfers from the Lintons were made to the LLC, the limited partnership, and then the Lintons directed the partnership to transfer part of their capital accounts to the children, make gifts to the children, that would be what they wanted to do and what they were counseled to do by their tax person. They would then be arguing about how much reduction they would get off of the hard assets because they simply gifted limited partnership interests. Is that right? Yes, that's correct. The Lintons wanted to give interest in an LLC. They did not want to give the cash in the property.  Okay. Now, assuming that's what you contend they wanted to do, and it's pretty obvious that's what they wanted to do, you contend that's exactly the sequence that occurred, I believe. Yes. And you've been talking about how the capital accounts were handled on the books of the partnership as evidence of that. Correct. I suspect Mr. Linton testified that's the sequence in which these events occurred. Did he testify to that? I believe he testified that it was the sequence that they intended to occur, which is why they did not date the gift assignment. Yes, that was his intention. That's what everyone understood would happen and would be the sequence. Did his wife testify to that as well? I don't recall what the wife testified to. What I'm getting at is I think you've told us what the evidence is, but maybe there's more, that establishes the sequence that you contend transpired. Was there more evidence that would show that that was the sequence? I think the evidence here that shows that it's the sequence is the tax return, ER-228, the membership ledger. Those were all after the fact. Yes, they were after the fact. There is a document, it's the gift assignment. That is at the general assignment, ER-128.  It's in exchange for 100% of the partnership interest. That also demonstrates. And I think it's important that it doesn't have to be contemporaneous. The district court thought that it needed to be contemporaneous, but it does not. There's the Jones case. That was an early case. Then there was Holman and Gross. Those are two recent tax court cases in 2008. And there's also the Estate of Strangey case. Those cases all involve the same transaction. They all found that there was no indirect gift, and they relied on the capital account ledgers, the same ledgers that we have here. The government is going to say, well, the partnership agreement says that, or the trust agreement, I forget which, says that the partnership interests have been received, and that document was executed on the same date, even though it didn't bear a date. That document was executed on the same date as the transfer documents. And those documents say that the partnership, or that the trust have received these partnership interests. Right. I think that's what they mean. Right. The trust agreement has that language, that it has received. But I don't think that's controlling us to. Well, the point I guess I'm getting at, is there a dispute of the evidence on this point? Is that what we're talking about? Yes, there's definitely a dispute on the evidence. You're contending that this case should be tried, and summary judgment was inappropriate. Well, that's one of our contentions. Our first contention is that this court could find as a matter of law. You want to win the whole thing, so you say summary judgment should have been given. But there's obviously are some antecedent legal questions before we could know that, and that is on what date does a gift become transferred, which is probably a matter of Washington law, which there's been no discussion of. And another one is whether the tax, whether we're looking, whether intent matters as to a date when we know when it was actually signed. And I'm sort of mystified when if you actually sign something on a certain day and we know what date you signed it on, the fact that you have essentially decided to claim later on that you signed it on some different day is controlling. We know when you actually signed it, and besides which the document says at the time of the signing of this agreement, but even more generally, and there aren't documents that purport to transfer things when signed, effective when signed, whatever date you meant to put on it, you still signed it when you signed it. I'm not talking now about the fact that the wrong date was put on it. I'm saying whatever date was put on it, you signed it when you signed it. I don't think with respect to a gift, because I think with respect to a gift, you look to the intent. And I think the document says... Where are you getting that from? Is that Washington law? Is that federal tax law? What is it? Well, I think federal tax law discusses a gift. It's when you give up, you know, dominion and control. And so you... And if you say on a certain day that I'm putting something in here when I sign it and you sign it, then why isn't you giving it up then? Well, because they intended to give it up on the 31st. But that's different. But that's not the question. That's why I'm wondering where you're getting the rule of law, that what matters is not what you did but what you intended to do. Well, we get that from our argument that we're entitled to reformation under Washington law. And gift documents have been reformed by the court. The tax court did that in Holman. In that case, there was a deed that reflected a gift of the entire interest, and the IRS argued that there was a gift of the full interest. But you see here, it's the reformation that would not be telling the truth because you signed it on January 22nd. You did, in fact, sign it on January 22nd. So if you reformed it to say that you signed it on January 31st, it wouldn't be true. Well, it would be reformed because the document says that it's effective, I think, as the date or the date hereof. If the correct date had been put on that document, I don't think there would be any question that the gift would have been effective on the 31st. Which document are you talking about now? I think it would be the gift assignment. As to the truth, you, in fact, those interests had not moved to the trust on the 22nd, had they? They had just, they were still in the. No. The interest had moved to the trust on the 22nd. They moved on the trust on the 22nd because the deed when signed was effective when delivered. And they moved on the trust, the securities moved because of the general gift assignment at ER 128, where that document says that the Lintons were transferring, in exchange for 100% of the partnership interest, the securities and the property. So that assignment transfers to the LLC. And that's. To the LLC on the 22nd. On the 22nd. So there was a contribution of property. And I think. I'm just trying to pin it down from your point of view. On the 22nd, you had actually, they had actually, the Lintons had transferred to the LLC. Yes. They had not transferred to the trust. Right. That's all. Yes. The truth is they had not transferred. They transferred later. They transferred the LLC interest later. Later. Yes, that's our position. And that may be a question that has to go to a jury or may not. But anyway, that's what. Right. And I think it does not need to go to a jury. And this court can, under the gross Holman-Strangey-Jones, the capital accounts is what controls. And here the capital accounts and the partnership agreement dictate that, show that the capital account, that the contribution was made, the Lintons received 100% of the partnership interest. But those were also all after the fact. But they do not have to be contemporaneous. Jones. But if you're trying to prove when something happens, the way you characterize it later doesn't prove that very well. Well, that's a jury question. If this court does not find it's a matter of law that the capital accounts demonstrate the order that the Lintons contend, then it would be a disputed question. I have a somewhat outlier, outsider question, just because I'm very curious. Why does it matter in what order you do this? I mean, what conceptual reason does it matter? And I understand that theoretically it becomes an indirect gift if you do it afterwards, but not before. But why is that? Why isn't it as much an indirect gift or as much not an indirect gift in whatever order you're doing it? Well, the order matters because if you, I guess I'm not understanding your question. If you put money, let's take, if you do it afterwards, for some reason it is considered to be an indirect trust to the individuals rather than a contribution to the LLC, which is then distributed by the percentage shares. But if you put the property in beforehand and then divide up the property to the trust, then it's not considered an indirect gift. Why? It matters because of the partnership agreement and Washington law. Because if they had not, if they had gifted the interest first and then made a contribution to the LLC, because their capital account would be credited with the full amount of that contribution, we use the term that the non-contributing partners' capital accounts would not have been enhanced. So this document would say, okay. So then it would be less of a gift. It sounds like they just wouldn't have anything. They would have failed at giving a gift. But that's not what the argument is of the government. The government's argument is it's an indirect gift, not that it's a nothing. Exactly. And I think that's wrong because what actually, I mean, the government is trying to make a gift here out of making up a gift by reordering. But all the cases do seem to think it matters. If the Lentons today contributed property to the LLC, I don't think there's any question. And, in fact, Holman goes into this. If they contributed it today to the way the partnership agreement is structured, there would not be any gift, and the government would likely not argue that there is a gift because under the law, under contract law of the partnership, those non-contributing partners, so the kids' trust, they're not entitled to any commitment. So does this whole problem trace, in one sense I got reading all the cases, is that it really traces back to the step transaction doctrine because if these things happen right on top of each other, there's a notion that really it was all one transaction and not two, and that's really why they're considering an indirect gift even though those two things seem to be discussed separately. Well, the government has tried to use the step transaction. I'm saying that. No, I don't think it does because I think, you know, the point you made earlier, that is there, can it be distinguished and should it be, you know, should it be distinguished? Under the step transaction doctrine, the cases have held that as long as there's six days in between, then it's not an indirect gift. Apparently this magic six days works. We know 11 days is okay. But that's because there seems to be some reason, but because the notion is because there might be a difference in value between what went in and what's being then distributing. Exactly. But what if it's money? If it's cash, there isn't going to be any difference. There isn't, but I would argue that there is no rational distinction. There's no reason why a change in value is necessary before you to not apply the step transaction doctrine. The step transaction really looks at the substance over the form, and here whether there's a change in value doesn't change that the substance here matches with its form. There was a contribution and then a gift of interest. The kids only received interest in a business. That's what the Lentons wanted. They did not want to give their kids cash. They wanted to give them an interest in a business, and so that's... Okay. My curiosity had you going over time. Thank you very much. Thank you. May it please the Court, let me begin with a general observation about family-limited partnerships. May we generally observe that you're Mr. Cohen? Yes. Okay, thank you. I'm Don Cohen. I can also generally observe that the government doesn't like these family-limited partnerships very much. I've made something of a cottage industry for the past five years of blowing them up. Most of them... Why don't you just go to Congress and get a statute passed that says you can't do this discount? I'd love to, but the estate tax, as you know, is in limbo. At the moment we don't have... Most of my cases are estate tax ones where... Let's go back. The family-limited partnership is a gimmick. It's basically putting a partnership wrapper on all of your assets, ideally shortly before you die, and then retaining the power to use these assets to support you in your remaining years. The partnership agreement provides that the partnership interests are not transferable freely, and they are only minority interests. The standard way these things are marketed to wealthy individuals is that you can transfer assets worth, let's say, $5 million and then die, or in this case make a gift of, because this is a gift tax case, partnership interests, because that's what you own at your death or that's what you give away, that are worth half of that, which is roughly where we started out here. The Lentons gave about $3.5 million worth of property. I can understand concern about that, but I can't understand this order of transaction business at all. Because here there are situations where indeed these partnerships, particularly in a gift... This is not likely to come up in an order of transactions. It isn't going to happen in an estate tax case. It will in a gift tax case. And here, since the objective of the donor is to make a gift of a partnership interest, he says, which is worth half of what the actual amount he wants to give is, he knows, is that first he has to have a viable, limited partnership, and then he has to give interests, highly restricted, to the children, and then maintain that the interests are worth 50% of what he put into the partnership, because what he gave, after all, was partnership interests, not the... In this instance, I understand it. That's not really the dispute. There was a partnership, and he did give some to the kids. The question was, in what order was the assets put into the partnership, right? Okay. There's no question that what he meant to transfer was $3.5 million in stock, cash, securities, and some six parcels of real estate, as to which the record is rather vague. Let me begin by going to your first question, Judge Berzon, about the capital accounts, a point which Ms. Johnson makes a big to-do, and you looked at ER 228 and said, well, here we have the various capital accounts. ER 228 is Schedule L to ER 215, which is the partnership return. It was filed on March the 29th, 2004. There is no dated ledger indicating when transfers of those interests... But isn't it evidence? It's evidence that a jury can look at. I would say that it is so far removed in time as to have virtually no probative value. Well, you could argue that to the jury. Of course. But it's not very far removed. All right. Now let's say... And you assume they have honest accountants, they're honest taxpayers, the jury can look at it. You can't exclude it the way Judge Zille did. No, he didn't. He allowed... This is all in the record, and he allowed oral testimony as well. No, but he didn't consider it as creating a doubt. It didn't alter the fact that all the documents that were executed on January 22nd said these assets have been transferred. Yeah, but the crucial dating was not executed on that date. So maybe there are problems with your case. You may have a wonderful time before a jury explaining all this, but I think you... Let me just speak for myself. You've got a big problem here defending summary judgment. Well, defending summary judgment where the basic underlying facts are undisputed and documentary is not nearly as hard as it is when it comes down to questions of weighing credibility. That's a tough assignment. But let me go to, if I may, Ms. Johnson's big argument about... The worst-case scenario, I guess I better do it accurately, says the worst-case scenario for the sentence would be that indeed the stock transfer and the transfer of the partnership interest didn't happen in the order that was found by the district court and that the government maintains, but rather that the trusts were not owners of the interest at the time the assets were transferred because then all the capital accounts would be properly credited. This is not a new argument. I'm going to read, if I may, if you'll indulge me, very briefly from the Eighth Circuit's opinion in Senda. In an alternative tact, the Sendas argue that it is irrelevant whether the stock transfer was before or after the gift of partnership interest. They say, if the Sendas had made their capital contributions after they made the transfers of their limited partnership interest, which we say they did, the contributions would still have been allocable to the capital accounts associated with the partnership interest retained by the Sendas. Therefore, it was impossible under the terms of the partnership agreements for the Sendas to transfer their capital accounts without transferring the corresponding partnership interest. Wasn't there the taxpayer's response to that here, that the structure of the partnership was different there? Not significantly. I thought it was different with regard to the question of whether the capital accounts actually did bridge at main with who contributed or rather what distributed. I think that the final comment of the Eighth Circuit is relevant to that. The Sendas overlook the ultimate finding of the tax court. Immediately after concluding that they did not meet their burden of proving that the stock transfers preceded the gifts, the tax court finds, quote, at best the transactions were integrated, as asserted by respondent, Commissioner, and in effect simultaneous, unquote. The tax court recognizes that even if the Sendas contribution would have first been credited to their accounts, this formal extra step does not matter. Well, you know, there's no law against minimizing your tax. No, never said there was. And they took advice and they found a way. Yeah. And you sort of say this is a racket. The law permits it. It's not a racket. It's not a racket. But it's certainly marketed very aggressively with just the idea in mind that every now and again, one of these things will work. It's very hard. If I may ask myself a question, I'm very glad that the Court has not asked me, and so I'll pretend it didn't happen. Well, what could you do to avoid this kind of problem? Taxpayer or the government? For the taxpayer. Well, you should do it right instead of wrong, but that's not. Well. You have a lawyer who doesn't. Still, we told you they integrated it. No, I think that basically what you have to do is have truly, first off, as a bookkeeping matter, I think you do have to have very accurate contemporaneous written records. But I think you also will find as you look through the case law that the cases that the taxpayers have won have generally involved situations where there was enough delay in the timing of these things to interject a real note of market risk. So that's where I was getting the question that I started down, which is, So it sounds to me that what you're really saying is that the dominant consideration here really is a step transaction-like investigation. Absolutely. That applies, it's not really the tail, it's the dog, the step transaction consideration. Those considerations really are exactly what we are, what drives this kind of case, is you wanted to give $3.4 million. You, in fact, figured out a way to put a wrapper around it. You can call it cosmetic, I do if I'm feeling polite. It's at best. And then say, well, because we gave partnership interest, they're worth less. But does that mean, for example, that cash is never going to count because cash isn't, there's no market risk? No, because cash will go into the partnership like the real estate and negotiable securities. You're saying that there has to be some market risk. Yes. Yes. So if what's going in and coming out is all cash, there's no market risk. Then that's right. How old are the Lentons? How old what? How old are the Lentons? Their age. I don't know how old the Lentons are. How old were they? I'm sure Ms. Johnson does. I can tell you that at the time of this trust, their oldest child was 17, so that's a lot of trips around the mall. Do you know how old they are? I do not know. I mean, suppose they're 60. They've got 20 years to manage these things. It's not a small restriction. You seem to treat it as though it's the same thing. It's a very substantial restriction. On marketability. On the children's interests that they can manage, that the Lentons remain in control. You seem to ignore that. I'm not ignoring it. Well, it's a very big difference. It's not just giving $4 million to the kids. It's giving them a share in the income. If you had a family limited partnership that grew out of a family, a large family that owned a divided interest in a lot of rental real estate, and the family was at loggerheads. There are plenty of instances I'm sure you can remember. Well, you want to think that's not our case. This is a very different case. No, no, I'm suggesting a situation where the family limited partnership serves a perfectly fine purpose, and they own fractional interest in It's not a fine purpose to minimize your debt? Fine. It will work. I have no problem with saying that if you take those assets, the Pritzkers with their real estate, the Redstones, and you put that kind of property into a family limited partnership, because it's really hard to convey fractional interest in real estate, and if there are loggerheads you do want centralized management that you can achieve through a limited partnership, that is not, in my book, a partnership wrapper designed to minimize or to freeze debt. The problem is that we're not. It's interesting because you sort of get the flavor of what's happening here, which is that you don't, you have a concern, but you don't have a structure that really fits your concern in the sense that there is no illegitimacy as such, as Judge Noonan is saying, of this structure, and therefore it devolves into this very peculiar concentration on a bunch of minutia as to, you know, whether this was signed on this day or that day, and I suppose you ought to, before your two and a half minutes are up, address that question as it relates to this case, why we should conclude that this, in this, because they attempted to set it up so there was eight days between them or nine days between them, okay, and we could debate about whether the nine days were enough, but that's how they set it up. If you want, you haven't really taken the position that the nine days isn't enough, so you seem to be taking the position that what matters is that it wasn't really nine days. No, what you really, what you had here was, taking all of the recitations at face value, was that the contributions to these, to the limited partnership, occurred after the interest in the partnership had already been transferred. And what is the rule? We take them at face value? I'm sorry? What is the rule that we take a document at face value? That there is nothing in the world that suggests that it wasn't exactly right. Except their testimony. No, their testimony was we really meant to make the transfers of the, excuse me, of the assets here. Well, then they suppose they had dated them properly. Suppose they assigned them when they signed them and dated them on the 31st. Now, I mean, one could say, well, you would never have figured it out. But leaving that aside, suppose you knew that. Would you regard that as, what set of law governs, first of all, this is the question I was asking before, is it Washington state law or tax law or what, as to which, what happens when, and is it the date of the signing or the date they meant to put on it, even though they meant to sign it when they signed it? They signed it when they signed it. The question is, does the date they meant to put on it matter, and how do we know that? Where does it come from? Now, that's an interesting question which didn't get a whole lot of attention and which hasn't been mentioned, and that goes to the question of reformation and what did they mean and what can they do. That is Washington state law. Federal courts don't engage in reformation and tax refund suits. We raised the point, which Judge Zille noted in his opinion, that he didn't even have jurisdiction, we argued, to adjudicate reformation questions and that if there were a reformation question, it would have to involve making the trustee and the central party, and this would be the kind of matter that would have to be referred or certified, whatever your procedure is here, to the Washington Supreme Court, which might or might not take it. But the fact remains that so far as reformation is concerned, the judge said there's no reason to have reformation because I'm not going to find that their testimony as to the order of events alters the fact that all the documents recite this is what has occurred. So he wasn't going to reform it, and I suggest that that was absolutely correct. Whether he had the power to reform it is a more nuanced question, but that's for another day. Well, reformation usually depends on mutual intent and you weren't part of the mutual. So, I mean, you were not a party to this agreement. That's right. We weren't a party to this, and reformation would entail at the least having the trustee who accepted on behalf of the transfers, and he wasn't a party. But you don't have a position then as to, so is your ultimate position that their intent is simply irrelevant? What if they did date it on the 31st but signed it on the 22nd? They'd have a pretty strong case, but I'm not saying that they would win because under the step transaction doctrine, the technical order of events is not, we can still win the case. Even if they had done it right, we could still win the case. But not because it would be considered to have been done on the 22nd, but because the nine days wasn't enough. But you wouldn't argue that you should consider it happening on the 22nd because it did happen on the 22nd, even if it was dated on the 31st. If the order of events was as they wished it to have been. I.e., we signed it on the 22nd, but we dated it the 31st. But we would still have the argument that given there's been no showing of any risk, any volatility, that this was really nothing more than an interdependent linked series of steps to convey $3.5 million that would be somehow dumped down into being worth a million and a half or a million and a half. But not transferring the subject to serious disability. They are not able to manage it. And if the Lentons are 60 years old, they've got 25 years ahead of them, but they won't be able to manage it. The trustee is going to manage the trust for the benefit of these children. And at the time that those trustees... Well, that's the trust, but not the management of the... That's where beneficial enjoyment really is important. But this is where I get completely confused about why the order matters. As Judge Noonan says, this is going to be sitting there for a long time, and it's going to have whatever management characteristic it has, and it's going to have whatever discount it has, either does or doesn't have. But why does it matter whether it went in there first or second? In other words, even if the money had gone in second, everything would still be the same. The step transaction leads to minimizing the term. No, the step transaction would treat this as, in essence, not a gift of partnership interest, but of the underlying assets to the partnership. And you're saying that if it went in second, you would call it an indirect gift. Yes. If it went in first, at least with enough time frame, you wouldn't call it an indirect gift. Let me point out to you. If it's integrated, you look at the whole transaction, and the end of the transaction is to give the children a limited interest in these accounts. So that's what the steps accomplish. They don't give them cash or anything. They give them a limited interest, and all the steps together add up to that. Well, that's what it ended up as. Well, that's what the step transaction is premised on in this kind of case. But the step transaction doctrine is basically a different articulation of substance versus form. And substance here is that the Lintons intended to give a gift of $3.5 million. That's your reading of it, though, imaginary. Okay. Thank you very much. It's all very interesting for non-tax experts. So thank you very much for your arguments. I don't remember if you have a little time left, but we'll give you a little time. Thank you. You don't need to take it. Two minutes. Beware. Sorry. I just want to see if I can explain why the timing matters. If this was a corporation, let's say Microsoft, and I gave Microsoft $10,000, and there were already shareholders, then each shareholder's interest increased by a fraction because the corporation now has $10,000 more. But that's not how partnerships work, and it's not how this partnership under this partnership agreement worked. Because if the partner gave the partnership $10,000, the partnership has a capital account. It writes down, partner A gets $10,000 back when we dissolve this partnership. Partner B doesn't get any of that $10,000. So that's why the timing matters, is because if the partner's already a gift. But it's easily changed by simply having one partner give more of their shares to another partner, right? Then there could be, yes, a gift of the shares. But apparently the government, and you haven't argued either, that that would help anything or change anything, that the order still governs somehow. Right, and we think the order is demonstrated by the capital account. And I just want to point out that it doesn't have to be contemporaneous. It wasn't in Holman and Jones. There was no indication or requirement that it was contemporaneous. And in Gross, there wasn't a capital account. There was only a return. And I just wanted to point out that Senda, although the government relies on Senda, there was no capital account in Senda. The tax court was very clear. There was no evidence that the partnership had a capital account. Thank you very much. Thank both of you for your educational arguments. Mr. Cohen, how long have you been representing the government in this capacity? Forty-three years. Twenty-three? Forty-three. Forty-three. My goodness. Well, you do a good job. You do too, Ms. Johnson.
judges: Noonan, Thompson, Berzon